IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HJALMAR RODRIGUEZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | No: 5:15-CV-002-CAR-CHW |
| Warden BRUCE CHATMAN, et. al, | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| Defendants | : | BEFORE THE U. S. MAGISTRATE JUDGE |

## ORDER & RECOMMENDATION

Plaintiff **Hjalmar Rodriquez**, an inmate currently confined at the Georgia Diagnostic and Classification Prison in Jackson, Georgia, filed a *pro se* civil rights complaint in this Court seeking relief under 42 U.S.C. § 1983 and has been granted leave to proceed in this action *in forma pauperis*.[1] Plaintiff has since supplemented his complaint with new claims and filed a motion for emergency injunctive relief. After conducting a preliminary review of Plaintiff's Complaint (Doc. 1) and Supplement (Doc. 9), the undersigned finds that Plaintiff's allegations are sufficient to allow claims against **Officer Clupper, Lieutenant Kyles, Nurse Mary Gore, Warden Humphrey, Warden Chatman, Deputy Warden Bishop, Deputy Warden Powell, Unit Manager McMillian,** and **Unit Manager Logan** to go forward. It is **RECOMMENDED**, however, that all other claims be **DISMISSED**, as discussed herein, and that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO," Doc. 10) be **DENIED**.

---

1 This does not mean that the filing fee is waived. Plaintiff is still obligated to pay the full balance of the $350 filing fee using the payment plan described in § 1915(b) and ordered herein. For this reason, the Clerk of Court is **DIRECTED** to send a copy of this Order to the business manager of the facility in which Plaintiff is currently confined.

I.      **Preliminary Screening of Plaintiff's Complaint**

   A. **Standard of Review**

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his Complaint. See 28 U.S.C. § 1915A(a).  In so doing, the district court must accept all factual allegations in the complaint as true.  Brown v. Johnson, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings, like the one in this case, are also "held to a less stringent standard than pleadings drafted by attorneys" and must be "liberally construed" by the court.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed liberally and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted.  See § 1915A(b)(1).  To state a claim, a complaint must include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  The plaintiff must also allege sufficient facts to "raise the right to relief above the speculative level" and create "a reasonable expectation" that discovery will reveal evidence to prove a claim.  Id.  "Threadbare recitals of the elements of cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).

   B. **Plaintiff's Claims**

The present action arises out of Plaintiff's confinement in the Special Management Unit ("SMU") at Georgia Diagnostic and Classification Prison.  Plaintiff alleges that he has been confined in SMU since August 20, 2011, and has *never* been afforded a "meaningful" classification hearing, review, or appeal.  Plaintiff also alleges that, on December 19, 2014,

2

Officer Clupper intentionally and "sadistically" slammed his hand in a tray flap without cause or provocation, and that Lieutenant Kyles and Nurse Mary Gore subsequently denied Plaintiff treatment and pain medication for his injured hand despite obvious swelling, a crooked finger, and his complaints of pain. Plaintiff informed Lieutenant Kyles that he intended to file a grievance, and Kyles allegedly responded that it "would only get [Plaintiff] into trouble."

Plaintiff alleges that Clupper and Kyles then wrote a false disciplinary report with the intent that Plaintiff would be transferred to punitive isolation. Inmates in punitive isolation are apparently denied all out-of-cell recreation, access to their personal property, and the ability to participate in "GED mandated classes." A month later, on January 22, 2014, Plaintiff was afforded his normal ninety-day classification review hearing with Deputy Warden Powell and Unit Manager Logan. During the hearing, Plaintiff notified Powell and Logan that he had already filed a grievance regarding the incident underlying the disciplinary report. Warden Powell then allegedly responded that Plaintiff should "see where filing [that] grievance has gotten him." Plaintiff was then denied release from punitive segregation despite the fact that the underlying disciplinary report had been dismissed on January 14, 2014. Plaintiff remained in isolation until March 5, 2014, and when he was released, Plaintiff learned that his property had been "destroyed."

Plaintiff additionally complains that prisoners in SMU are not allowed go the law library or provided access to any "person trained in the law." The law librarian, John Young, and SMU superintendent, Rodney McCloud, will only allow Plaintiff access to two items per week – and even then, Plaintiff must specify the case law, statutes, SOPs, or regulation he needs. Plaintiff has apparently been unable to access any law books despite the fact that both Young and McCloud are aware of Plaintiff's upcoming criminal trial in which Plaintiff has chosen to represent himself.

Plaintiff has now filed the present civil rights action against Warden Bruce Chatman,

3

Deputy Warden Powell, Deputy Warden Bishop, Deputy Warden Gary Caldwell, Unit Manager Rugus Logan, Nurse Mary Gore, Lieutenant Michael Kyles, Officer Derek Clupper, Warden Carl Humphrey, and Unit Manager James McMillian for alleged violations of his First, Eighth, and Fourteenth Amendment rights.  The Complaint also includes state law tort claims of assault, battery, and intentional infliction of emotional distress.   In his Supplement and Motion for TRO, Plaintiff adds claims against Librarian John Young and SMU Superintendent Rodney McCloud for alleged violations of both his right of access to the courts and the Sixth Amendment.

    A. First Amendment Claims

Plaintiff attempts to bring First Amendment retaliation claims against **Officer Clupper** and **Lieutenant Kyles** for their filing a false disciplinary report in response to learning that Plaintiff intended to file a grievance against them.  He also brings First Amendment retaliation claims against **Deputy Warden Powell** and **Unit Manager Logan** for allegedly keeping in him punitive segregation because he had filed grievances.  It is well-settled that a prison official may not retaliate against an inmate for engaging in conduct protected by the First Amendment. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).   The undersigned thus finds that Plaintiff's allegations, when liberally construed and viewed in the light most favorable to Plaintiff, are sufficient to allow his First Amendment retaliation claims to go forward.

    B. Eighth Amendment Claims

Plaintiff also attempts to state Eighth Amendment claims based on the use of force by Officer Clupper, an alleged denial of medical care by Lieutenant Kyles, Mary Gore, and Deputy Warden Caldwell, and the conditions of his confinement in punitive segregation.  Upon review, the undersigned finds that Plaintiff's allegations are sufficient to allow an Eighth Amendment excessive claim against **Officer Clupper** and inadequate medical care claims against **Lieutenant**

4

**Kyles**, and **Mary Gore** to go forward. Plaintiff's claims based on the alleged denial of all recreation in punitive isolation will also be allowed to go forward against **Warden Chatman, Deputy Warden Bishop, Deputy Warden Powell,** and **Unit Manager Logan**.

Plaintiff, however, has failed to state a claim against Deputy Warden Caldwell for denial of medical care and against Defendants Clupper and Kyles based on the conditions in punitive confinement. Plaintiff has also failed to show that Warden Bruce Chatman, Deputy Warden Powell, Deputy Warden Bishop, or Unit Manager Logan can be held liable for their subordinates' alleged unlawful use of force or denial of medical care.

1. *Denial of Medical Care Claim against Deputy Warden Caldwell*

Deputy Warden Gary Caldwell is the warden of care and treatment at the prison and apparently oversees the medical staff. In his Complaint, Plaintiff alleges that he has "written to Defendant Caldwell on many different occasions and submitted inmate interview requests to him" about the alleged denial of medical care but Caldwell failed to respond. These allegations, even when viewed in Plaintiff's favor are not sufficient to support an Eighth Amendment claim for denial of medical care. Prison officials who were not directly involved in the alleged unconstitutional behavior, and whose only roles involved a failure to act in response to letters of complaint from a prisoner "are not liable on the theory that failure to act constituted acquiescence in the unconstitutional conduct." Reis v. Augustine, No. 5:12–cv–00336, 2014 WL 6611584, at *4 (N.D. Fla. Nov. 21, 2014) (citing Grinter v. Knight, 532 F.3d 567 (6th Cir. 2008)); Ware v. Owens, CV612–056, 2012 WL 5385208, at * 2 (S.D. Ga. Sept. 28, 2012) ("failure to respond to an inmate's letters does not result in a violation of that inmate's constitutional rights"). See also Simpson v. Stewart, 386 F. App'x 859, 861 (11th Cir. 2010) (allegations that sheriff was "responsible for the well-being of all the inmates in the jail" were insufficient to state a claim

5

under § 1983). It is accordingly **RECOMMENDED** that Plaintiff's Eighth Amendment claims against **Deputy Warden Caldwell** be **DISMISSED** without prejudice

> 2. *Conditions of Confinement Claim against Officer Clupper and Lieutenant Kyles*

Plaintiff also attempts to bring Eighth Amendment claims against Officer Clupper and Lieutenant Kyles based on their causing Plaintiff to be transferred and held in punitive confinement. This logically implies that the conditions of confinement in punitive segregation are unconstitutional. Plaintiff similarly asserts that Defendants Chatman, Bishop, Powell and Logan violated his constitutional rights through their policy and custom of denying all out-of-cell recreation to inmates confined in punitive isolation. Plaintiff allegedly suffered "muscle deterioration," stiffness in his knees and back, "spirit hopelessness," and sleep deprivation as a result of the lack of out-of-cell recreation during his seventy-six day confinement in punitive isolation (December 20, 2013 to March 5, 2014).

To prevail on an Eighth Amendment conditions of confinement claim, a prisoner must show that his conditions are objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). In some cases, a denial of out-of-cell recreation for an extended period of time will support an Eighth Amendment claim. Compare, Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996) (seven weeks without out-of-cell recreation unconstitutional because inmate did not have sufficient room for any type of recreation within his cell); Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir. 1997) (no violation when inmate confined for seventy days was "able to engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and step-ups"). At this early stage, the undersigned is unable to determine whether this is one of those cases. See Ruiz v. Estelle, 679 F.2d 1115, 1151-1152 (5th Cir.) amended in part, vacated in part, 688 F.2d 266 (5th

Cir. 1982) (explaining that the need for out-of-cell recreation "must be determined on the facts of each case and the evidence in each case should support the existence of any health hazard under the specific circumstances involved"). Thus, Plaintiff claims against Chatman, Bishop, Powell and Logan will be permitted to go forward for further factual development.

Plaintiff, however, did not make any allegations to show that either Officer Clupper or Lieutenant Kyles were responsible for the conditions of confinement in punitive isolation, created any policy regarding the allowed recreation in punitive isolation, or determined the amount of time Plaintiff would be required to remain in punitive isolation. Plaintiff merely alleges that these defendants knowingly caused him to be transferred there. It is thus **RECOMMENDED** that Plaintiff's Eighth Amendment conditions of confinement claims against **Officer Clupper** and **Lieutenant Kyles** be **DISMISSED** without prejudice.

### 3. *Excessive Force & Denial of Medical Care Claims against Warden Chatman, Deputy Warden Powell, Deputy Warden Bishop, or Unit Manager Logan.*

Plaintiff's Complaint also includes a section titled "Supervisory Liability," wherein Plaintiff alleges that Warden Bruce Chatman, Deputy Warden Powell, Deputy Warden Bishop, and Unit Manager Logan should be held liable for the actions of Officer Clupper because they took no disciplinary action against him and allowed him to remain working around Plaintiff even after Plaintiff filed a grievance, on December 25, 2013, regarding the use of force on December 19, 2013. Plaintiff also alleges that Deputy Warden Bishop failed to take any action in response to his letter and grievances regarding the alleged excessive use of force, denial of medical care, and retaliatory disciplinary reports. And, in his claims for relief, Plaintiff asserts that Lieutenant Kyles, Deputy Warden Bishop, and Deputy Warden Powell "fail[ed] to train" their subordinates.

Even when construed collectively and in Plaintiff's favor, these allegations fail to support a claim of supervisory liability under § 1983. A supervisory official cannot be held liable, under §

1983, for the unconstitutional acts of his subordinates absent evidence of a causal link between that defendant and the alleged constitutional deprivation. Averhart v. Warden, --- F. App'x ----, 2014 WL 5394548, at *1 (11th Cir. 2014); Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). As discussed above, a prison official's denial of a grievance or failure to respond to a letter of complaint from a prisoner is not sufficient to establish a supervisor's personal participation in the alleged constitutional violation. See Larson v. Meek, 240 F. App'x 777, 780 (10th Cir. 2007) ("denial of the grievances alone is insufficient"); Ware v. Owens, CV612–056, 2012 WL 5385208, at * 2 (S.D. Ga. Sept. 28, 2012) ("failure to respond to an inmate's letters does not result in a violation of that inmate's constitutional rights"). Liability likewise cannot be imposed based on a prison official's participation in an after-the-fact review of an incident or failure to take disciplinary action against the officer at fault. Johnson v. Hinsley, No. 2:09-CV-0180, 2010 WL 966651, *5 (N.D. Ga. March 12, 2010) ("the failure to investigate an accident/incident, without more, does not violate any constitutional rights") (citing Wright v. City of Ozark, 715 F.2d 1513, 1516 (11th Cir. 1983)). Here, the only allegation suggesting a direct connection between these defendants and Plaintiff's injuries is an alleged "failure to train." Plaintiff's single conclusory allegation that officials failed to properly train their staff, however, will not support an Eighth Amendment claim. See Salas v. Tillman, 162 F. App'x 918, 922 (11th Cir. 2006).

It is therefore **RECOMMENDED** that Plaintiff's Eighth Amendment excessive force and denial of medical care claims against **Warden Chatman, Deputy Warden Powell**, **Deputy Warden Bishop** and **Unit Manager Logan** be **DISMISSED** without prejudice.

C. Fourteenth Amendment Claims

Plaintiff appears to attempt multiple Fourteenth Amendment due process claims. In his Complaint, Plaintiff asserts that Defendant Warden Humphrey violated due process by failing to

provide him any type of classification hearing from August of 2011 through September of 2012. Classification hearings were apparently not held at the prison until a policy was created on September 16, 2012. Plaintiff alleges, however, that despite the policy, unit managers McMillian and Logan have still failed to provide him any "meaningful" classification review. Plaintiff claims that he has never been allowed to present any written or verbal statement or present evidence in his defense.

According to Plaintiff, prison officials have likewise failed to provide Plaintiff with any evidence justifying his continued confinement in SMU, and Plaintiff has never been "given any reason why or how long" he will remain there. Plaintiff has apparently been confined in the SMU (or punitive isolation) since August 20, 2011 – a period of roughly three and a half years. Plaintiff claims that he filed classification appeals but has never received any response from Deputy Warden Bishop and that the "sham hearings" conducted were condoned and upheld by Warden Humphrey and Warden Chatman.

Plaintiff also complains that he was confined in punitive isolation based upon a false (and subsequently dismissed) disciplinary report in violation of his rights to due process. The Complaint alleges that Deputy Warden Powell and Unit Manager Logan conducted a "sham" hearing on January 22, 2014, and continued to confine him is isolation until March 5, 2014, in retaliation for his filing grievances. Then, when he was released, Plaintiff learned that his personal property had been destroyed.

Plaintiff's allegations, when accepted as true and viewed in his favor, are sufficient to allow due process claims against **Warden Humphrey, Warden Chatman, Deputy Warden Bishop, Deputy Warden Powell**, **Unit Manager McMillian,** and **Unit Manager Logan** to go forward. See Shaw v. Hall, No. 5:12–CV–0135–CAR, 2013 WL 5606562, at * (M.D. Ga. July

9

17, 2013) ("the transfer of a prisoner into administrative segregation for a period of years may impose an atypical hardship, entitling him so some measure of due process") (citing Williams v. Fountain, 77 F.3d 372, 374–75 (11th Cir. 1996) (one-year in solitary confinement triggers procedural due process protections).

If Plaintiff has attempted to state a due process claim based on an alleged deprivation of property, however, he has failed. The taking, loss, and/or destruction of a prisoner's personal property (even if intentional) does not violate a prisoner's right to due process if the state has made available a meaningful post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Because the State of Georgia provides Plaintiff a meaningful post-deprivation remedy for the loss of his property, see O.C.G.A. § 51-10-1, he cannot state a due process claim for the alleged taking. See Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) (finding no procedural due process violation because Georgia "has provided an adequate post deprivation remedy" in O.C.G.A. § 51-10-1). As such, it is **RECOMMENDED** that any claim based on the alleged destruction of Plaintiff's property be **DISMISSED** with prejudice.[2]

D.  Claims for Denial of Access to the Courts[3] & violation of the Sixth Amendment

In a supplement to his Complaint, Plaintiff alleges that the prison law librarian, John Young, and SMU Superintendent, Rodney McCloud are currently interfering with his right of access to the courts because SMU prisoners are limited to receiving only two items per week from the law library. Defendants are apparently aware that Plaintiff was indicted in Chattooga County,

---

2 Plaintiff makes one reference to a denial of "equal protection" in his Complaint. To the extent this must be considered an attempted equal protection claim, the undersigned finds that the facts necessary to support an equal protection claim are not present in the Complaint. Plaintiff does not allege any fact suggesting that he has received disparate treatment because of a constitutionally protected interest, such as race, gender, or religion, see Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001), or identify facts sufficient to state a possible "class of one" equal protection claim, see Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006)).
3 The constitutional right of access to the courts is "grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment." Al–Amin v. Smith, 511 F.3d 1317, 1325 n. 17 (11th Cir. 2008) (quotation marks omitted).

10

Georgia in October of 2014 and has chosen to represent himself in the matter.  The trial is apparently set for May of this year, and Plaintiff asserts that he is not able to adequately defend himself without access to the prison's law library and that Defendants are thereby hindering both his criminal case as well as his civil litigation.

Plaintiff is correct that "prisoners have a constitutional right of access to the courts," Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir. 2006), and that this right generally "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries . . . ," Bounds v. Smith, 430 U.S. 817, 828 (1977). However, "access to law libraries is not mandatory to provide meaningful access to the courts [if] legal counsel is provided as an alternative." Smith v. Hutchins, 426 F. App'x 785, 789 (11th Cir. 2011) (quoting Bounds, 430 U.S. at 830-31).   Thus, "a criminal defendant who seeks to proceed *pro se* has no right to access a law library to aid him in his own defense at trial where he has already been provided the option of legal counsel."   Smith, 426 F. App'x at 789 (citing Edwards v. United States, 795 F.2d 958, 961 n. 1, 3 (11th Cir. 1986) (prisoner could not state a claim for denial of right to access law library during criminal trial where he had elected to proceed *pro se*)).[4]

In this case, Plaintiff alleges that he has chosen to represent and defend himself against the criminal charges pending in Chattooga County and that Defendants are aware of this fact.   While Plaintiff certainly has the right to choose to proceed *pro se* in that action, it does not entitle him to unrestricted access to the law library, as court-appointed counsel is available to criminal defendants.   By the same reasoning, Plaintiff has also failed to state a Sixth Amendment claim

---

4 See also Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (holding that prisoner "had no constitutional right to access a law library in preparing the *pro se* defense of his criminal trial"); United States ex rel. George v. Lane, 718 F.2d 226, 233 (7th Cir. 1983) (if detainee is offered appointed counsel and instead proceeds *pro se*, there is no constitutional right mandating that the prisoner be provided access to a law library); United States v. Wilson, 690 F.2d 1267, 1272 (9th Cir. 1982) ("The offer of court-appointed counsel . . . satisfied the Fifth Amendment obligation to provide meaningful access to the courts").

11

against these defendants. See Smith, 426 F. App'x at 788 ("the right to proceed *pro se* in a criminal trial does not imply there are additional rights to access legal materials or law libraries." See also, United States v. Smith, 907 F.2d 42, 45 (6th Cir.1990) ("We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library."); United States v. Wilson, 690 F.2d 1267, 1271 (9th Cir.1982) ("We decline to interpret the right to self-representation under the Sixth Amendment to include a right to conduct one's own research at government expense.").

If Plaintiff has attempted to state a claim based on this civil case, that claim would also fail. To state a viable § 1983 claim, a prisoner alleging a lack of access to a law library must show that he has suffered an "actual injury." Lewis v. Casey, 518 U.S. 343, 351 (1996). In other words, a prisoner would have to demonstrate that the lack of access to the law library actually hindered his efforts to pursue a specific legal claim that challenged either his conviction (directly or collaterally) or conditions of confinement. Id. at 354-55. Plaintiff has not alleged any such injury in his Complaint or Supplement.

It is therefore **RECOMMENDED** that Plaintiff's claims against **John Young** and **Rodney McCloud** be **DISMISSED** for failure to state a claim.

### E. GTCA Claims

Plaintiff additionally brings numerous state law tort claims against the individual defendants. Under the Georgia Tort Claims Act ("GTCA"), "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50–21–25(a). As a result, the individual defendants in this case are immune from suit. See Tootle v. Cartee, 280 Ga. App. 428, 430-31

(2006) ("[T]he GTCA's exemption of state officers and employees from liability for torts committed while acting within the scope of their official duties or employment has been construed broadly to include unauthorized tortious acts that occur during the time the officer or employee is engaged in performance of his official duties.") (internal quotation marks omitted); Mattox v. Bailey, 221 Ga. App. 546, 546, 472 S.E.2d 130, 131 (1996) (holding that prisoner state law battery claim was barred because the alleged battery arose from the performance of defendants' official duties as a correctional officer).  It is thus **RECOMMENDED** that Plaintiff's state law tort claims be **DISMISSED**.

## II.     Motion for TRO

In addition to his Complaint, Plaintiff has filed a motion for emergency injunctive relief. Therein, Plaintiff "seeks a temporary restraining order and preliminary injunction to ensure that he receive proper medical treatment and access to the courts." See Motion (Doc. 10) at 1.  To establish a right to such relief, Plaintiff must show "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

### A.    Request for Relief based on Denial of Medical Care

In his Motion, Plaintiff alleges that he is still being denied medical treatment for his injured hand and suffering continued pain, stiffness, and a limited range of motion.    Plaintiff's Motion, however, falls short of meeting the prerequisites for the issuance of a preliminary injunction.  At this stage in the litigation, Plaintiff has not shown a "substantial likelihood of success on the merits."  Id.  Plaintiff's description of his injury (and Defendants' knowledge thereof) is vague

and conclusory. Plaintiff has also yet to identify any objective evidence that the actions about which he complains violated his constitutional rights. Plaintiff has not submitted any denied "sick call" requests as evidence or any other proof that a named defendant is presently refusing to respond to his properly-filed requests for medical treatment. The only exhibit attached to Plaintiff's motion (Doc. 10-2) in fact suggests that Plaintiff is not currently receiving treatment for his hand because he has not submitted a sick call request since December of 2014. If Plaintiff wishes to receive the Court's assistance in obtaining medical treatment, Plaintiff must, at a minimum, show that he is actively requesting such treatment through the appropriate procedures.

B. Request for Relief based on Denial of Access to Legal Materials

Similar to those allegations in his Complaint, Plaintiff's Motion also asserts that his restricted access to legal materials is hindering his ability to prepare his criminal defense. For those reasons already discussed above, the undersigned finds that Plaintiff has failed to show a substantial likelihood of success on the merits of his constitutional claim. "The right to proceed *pro se* in a criminal trial does not imply there are additional rights to access legal materials or law libraries." See Smith, 426 F. App'x at 788.

For these reasons, it is **RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction be **DENIED**.

### III. Conclusion

The undersigned finds that Plaintiff's allegations are sufficient to allow claims against Defendants **Officer Clupper, Lieutenant Kyles, Nurse Mary Gore, Warden Humphrey, Warden Chatman, Deputy Warden Bishop, Deputy Warden Powell, Unit Manager McMillian, and Unit Manager Logan** to go forward for further factual development. It is thus **ORDERED** that service be made on these defendants and that they file an Answer, or such other

14

response as may be appropriate under the Federal Rules of Civil Procedure, § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

It is **RECOMMENDED** that all other parties and claims be **DISMISSED**, as discussed herein, pursuant to 28 U.S.C. § 1915A(b), and that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) be **DENIED**. As provided in 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable C. Ashley Royal, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. See 11th Cir. R. 3-1.

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have

been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure. Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted

by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court. This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred-twenty (120) days from when the discovery period begins.

### DIRECTIONS TO CUSTODIAN OF PLAINTIFF

In accordance with the Prison Litigation Reform Act, Plaintiff's custodian is directed to remit to the Clerk of this Court each month twenty percent (20%) of the preceding month's income credited to Plaintiff's inmate account until the $350.00 filing fee has been paid in full, provided the

amount in the account exceeds $10.00. Transfers from Plaintiff's account shall continue until the entire filing fee has been collected, notwithstanding the earlier dismissal of Plaintiff's lawsuit.

## PLAINTIFF'S OBLIGATION TO PAY FILING FEE

If Plaintiff is hereafter released from custody, he shall remain obligated to pay any remaining balance due of the above filing fee. Collection from Plaintiff of any balance due by any means permitted by law is hereby authorized in the event Plaintiff fails to remit payment.

**SO ORDERED**, this 18th day of March, 2015.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge